IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANTHONY N. JONES,              :

      Plaintiff,            :

vs.                       :        CIVIL ACTION 09-0835-CG-M

GRANTT CULLIVER, et al.,    :

      Defendants.         :

<u>REPORT AND RECOMMENDATION</u>

Plaintiff, an Alabama prison inmate proceeding <u>pro</u> <u>se</u> and <u>in</u> <u>forma</u> <u>pauperis</u> filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the Court on the Motions for Summary Judgment of Defendants Donny Myers and Doctor Negash Tesemma[1] (Docs. 65, 68, 77, 78); and Plaintiff's oppositions thereto (Docs. 71, 72, 73, 74, 75, 76, 85, 96). For the reasons stated below, it is recommended that the Motions for Summary Judgment of Defendants Myers and Tesemma be granted, and that Plaintiff's action be dismissed with prejudice.

---

[1] Dr. Robert Barnes is also named as a Defendant, but has not been served in this action. (Doc. 20). This is a nonissue, as the Court has determined that Plaintiff has failed to show a constitutional violation, and, therefore, this action is due to be dismissed as to all Defendants.

From its review of the record, the Court summarizes the parties'
allegations which are material to the issues addressed in this Report
and Recommendation.  At the time of the medical care complained of
in this action, approximately July 14, 2009 through December 4, 2009,
Plaintiff was an inmate incarcerated at Holman Correctional Facility
("Holman") in Atmore, Alabama.[2]  (Doc. 20 at 4).  The record reflects
that Plaintiff, while incarcerated at Holman, complained of
suffering from a peptic ulcer and a hemorrhoid problem, two
conditions he alleges to have endured since approximately 1977.
(Id. at 4).  According to Plaintiff, he unsuccessfully sought health
care assistance at Holman for over two years for these problems,
requesting numerous times to be referred to specialists and to be
prescribed and re-prescribed narcotic pain medication.  (Id. at 4,
8).  Plaintiff alleges that Dr. Barnes denied his request for a
referral to a specialist to evaluate his gastric problems, and
afforded him improper medical treatment while he was his physician
at Holman.  (Id. at 5).

Likewise, Plaintiff claims that when Dr. Barnes left Holman,
Dr. Tesemma continued to deny his requests to see free world

---

[2] Since the filing of this lawsuit, Plaintiff has been transferred
first to St. Clair Correctional Facility (Doc. 13), and then to
Donaldson Correctional Facility, where Plaintiff currently resides.
(Doc. 23).

specialists, just as Dr. Barnes had previously, for his medical conditions, namely, according to Plaintiff, the ulcer and the hemorrhoid. (Id.). Plaintiff contends that Mr. Myers "misappropriat[ed] [his] job description and records" and also complains that Myers answered Plaintiff's grievances in place of Dr. Barnes, which "created [nonfeasance] upon all plaintiff [grievances]." (Id. at 6). Plaintiff further asserts that there was a conspiracy between the Defendants to deny him proper medical care. (Id. at 8). Additionally, in his original Complaint, Plaintiff alleges that "it has been a routine for 23 years … at all the prisons … [that] officers or healthcare induce or lace [his] meals or medicine with something that keeps [him] confused/dizzy like [he is] drunk on some type of opiate drugs (sic)." (Doc. 1 at 10).

The records reflect that during the period of time from October 28, 2008, through approximately February 8, 2010, when Plaintiff was transferred from Holman to St. Clair Correctional Facility, he was seen by medical staff at Holman a minimum of thirty-seven times, in addition to being afforded blood work, tests, chronic disease clinic care, and the following medications: Prilosec, Hytrin, CTM, Imodium, Mylanta, Debrox, Tylenol, Hydrocortisone Cream, Tinactin, Triamcinolone, Cipro, Tolfonato, Tylenol with Codeine, Percogesic, Tums, Motrin, Cortisporin, and Naprosyn. (Doc. 78, Ex. 2 at 17-23, 29-31, 69-72, 74-75, 80-83, 87-89, 91-94, 96-97, 99; Ex. 3 at 1-3,

6, 9, 10-14, 20, 26, 33, 40-50, 68-80).

Many of Plaintiff's complaints and requests to the Holman medical staff concerned pain which he believed stemmed from an ulcer. (Doc. 78, Ex. 2 at 56). Plaintiff also occasionally complained of hemorrhoids, testicle pain, but most frequently demanded narcotic pain relievers for his stomach pain. (Id. at 3-5, 57, 95-98).

Dr. Negash Tesemma avers that during the period of time that Plaintiff was under his care, Plaintiff had been previously diagnosed with prostatis, which Dr. Tesemma explains is "a condition affecting one's prostate which is usually the result of a bacterial infection and can cause the prostate to enlarge, thereby sometimes restricting urination." (Doc. 78, Ex. 1 at 2). Dr. Tesemma states that Plaintiff was also previously diagnosed with "gastroesophageal reflux disease or GERD," which is "a chronic digestive condition caused when stomach acid enters the esophagus and causes an irritation of the esophagus," as well as Hepatitis C. (Id.).

Dr. Tesemma avers that when he first evaluated Plaintiff on September 2, 2009, Plaintiff requested a narcotic pain reliever for his abdominal discomfort, Tylenol No. 3, the same pain reliever that Dr. Barnes had prescribed for him previously during his incarceration at Holman. (Id.). However, after examining Plaintiff and reviewing his chart, Dr. Tesemma determined that there was no medical basis for the continuation of the narcotic pain reliever, and

4

informed Plaintiff of this. (Id.). Plaintiff became angry upon being advised of this, and immediately left the health care unit, according to Dr. Tesemma. (Id.). Dr. Tesemma did provide Plaintiff with a prescription for Mylanta on September 2, 2009, and later, on September 19, 2009, prescriptions for Ibuprofen and Acetaminophen for complaints of discomfort in his groin. (Id.).

On September 30, 2009, Dr. Tesemma continued Plaintiff's prescription for Prilosec, and then examined Plaintiff on October 2, 2009, diagnosing him with gastrointestinal reflux disease at that time. (Id. at 3). On October 7, 2009, Dr. Tesemma performed a rectal exam on Plaintiff and found no evidence of hemorrhoids, fissures or bleeding of any kind. (Id.). Dr. Tesemma did find that Plaintiff was suffering from prostatis and prescribed an antibiotic as well as the medication Hytrin, which is used to treat enlarged prostates. (Id.).

On October 12, 2009, Dr. Tesemma entered orders for Plaintiff to continue his Prilosec and Dulcolax, and also ordered additional lab testing at this time to better monitor Plaintiff's condition. On October 13, 2009, according to Dr. Tesemma, Plaintiff failed to appear for sick call, but he submitted an additional request form on October 24, 2009, requesting pain medication and Mylanta for his abdominal discomfort. (Id.). During his sick call, Plaintiff advised the medical staff that he was suffering from an "ulcer."

(Id.).  Dr. Tesemma reviewed Plaintiff's requests for additional
medications related to his abdominal pain and instructed Plaintiff
to take the medication Mylanta, while also entering orders for
Plaintiff to undergo certain lab testing and continued Plaintiff's
prescriptions for Prilosec and Dulcolax.  (Id. at 3-4).

On November 30, 2009, Plaintiff again submitted a sick call
request form complaining of diarrhea and an "ulcer," but again he
failed to appear when called on that date. (Id. at 4).  According
to Dr. Tesemma, Plaintiff refused to undergo lab work in January 2010
that had previously been ordered for him.  (Id.).  On January 21,
2010, Dr. Tesemma avers that he entered orders for Plaintiff to
receive Tylenol and Debrox for an ear condition. (Id.).

According to Dr. Tesemma, he last evaluated Plaintiff on
February 4, 2010, pursuant to Plaintiff's sick call request stating
that his ear was "clogged up, symptoms of a cold and diarrhea."
(Id.).  Plaintiff did complain of rectal itching, and pain in his
ear, but Dr. Tesemma never noted any indication of a hemorrhoid.
(Id.).  Dr. Tesemma entered orders for Plaintiff to receive an ear
lavage, Motrin, Imodium, and Mylanta.  (Id.).

Dr. Tesemma also avers that he and the Holman medical staff
actively monitored Plaintiff's Hepatitis C condition through a
series of regular appointments, also known as "chronic care clinics."
(Id. at 5).  Dr. Tesemma further avers that Plaintiff never

demonstrated any symptoms that would have indicated that he suffered from an ulcer or a hemorrhoid, and thus Dr. Tesemma never diagnosed Plaintiff with either of those conditions. Dr. Tesemma believes Plaintiff may be confusing his actual medical diagnoses of prostatis and GERD with the conditions of "ulcer" and "hemorrhoid," conditions which Plaintiff believes that he suffers, but which there is no medical evidence that Plaintiff does in fact suffer from these conditions. (Id.). It is Dr. Tesemma's opinion that the conditions of prostatis and GERD, Plaintiff's health conditions, rarely require the attention of a medical specialist of any kind, but instead are routinely treated by on-site medical staff. (Id.).

## II. PROCEDURAL ASPECTS OF THE CASE

On December 22, 2009,[3] Plaintiff filed the present § 1983 Complaint in this Court, seeking compensatory and punitive damages, as well as injunctive relief ordering Dr. Tesemma to refrain from his inadequate medical care, to recommend Plaintiff to an ulcer and hemorrhoid specialist, and to prescribe Plaintiff "Tylenol Number Three or Lortab's."[4] Plaintiff also seeks a declaratory judgment against Defendants Donny Myers and Doctor Negash Tesemma for providing inadequate medical treatment which has allegedly violated

---

3 While Plaintiff originally filed this action on December 22, 2009 (Doc. 1), he filed a Motion to Amend on February 17, 2010 (Doc. 14), which was granted by this Court on February 22, 2010 (Doc. 15).
4Plaintiff is no longer at Holman, and thus his claim for injunctive relief is now moot.

Plaintiff's Eighth Amendment right against cruel and unusual punishment. (Doc. 20 at 22-23).

On December 29, 2010, Defendant Myers filed his Special Report and on January 3, 2011, Myers filed his Answer, denying any violation of Plaintiff's constitutional rights and asserting various defenses, including qualified and absolute immunity.[5] (Docs. 65, 68). Subsequently, on February 1, 2011, Defendant Dr. Negash Tesemma filed his Answer and Special Report, also denying any violation of Plaintiff's constitutional rights and asserting various defenses, just as Defendant Myers. (Docs. 77, 78).

The Court converted Defendants' Special Reports and Answers to a Motion for Summary Judgment on July 14, 2011. (Doc. 94). During the pendency of this action, Plaintiff filed numerous oppositions

---

[5] It appears that Plaintiff is suing Defendants in both their official and individual capacities. The Court notes that, as private actors, Defendants, Donny Myers and Dr. Tesemma, are not entitled to immunity, whether qualified or absolute. See Swann v. Southern Health Partners, Inc., 388 F.3d 834, 837 (11th Cir. 2004) ("The parties agree that as a private entity, SHP [a private corporation employed by the County to provide medical care to inmates at the county jail] is not entitled to assert a qualified immunity defense."); Hinson v. Edmond, 205 F.3d 1264, 1265 (11th Cir. 2000) (a "privately employed prison physician" "is ineligible to advance the defense of qualified immunity"); Edwards v. Alabama Dep't of Corrections, 81 F. Supp. 2d 1242, 1254 (M.D. Ala. 2000) (a private entity contracting with a state to provide medical services to state inmates "is not entitled to qualified immunity...."). Similarly, with respect to absolute immunity, the Court is aware of no case extending absolute immunity to a privately employed doctor or employee working with a private company providing medical services to state inmates.

to Defendants' Motions for Summary Judgment.  (Docs. 71, 72, 73, 74, 75, 76, 85, 96).

These motions and responses are now before the Court.

### III. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The <u>Federal Rules of Civil Procedure</u> grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  It is well established that summary judgment is proper under <u>Federal Rule of Civil Procedure</u> 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

All of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party.[6] <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Jackson v. BellSouth Telecomms.</u>, 372 F.3d 1250, 1280 (11th

---

[6] The Court notes that the "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." <u>Priester v. City of Riviera Beach</u>, 208 F.3d 919, 925 n.3 (11th Cir. 2000) (citations and internal quotation marks omitted). Nevertheless, for summary judgment purposes, the Court's analysis begins with a description of the facts in the light most favorable to the nonmoving party.  <u>McCullough v. Antolini</u>, 559 F.3d 1201, 1202 (11th Cir. 2009).

Cir. 2004).  That being said, Rule 56(e) provides, however:

> If a party fails to properly support an
> assertion of fact or fails to properly address
> another party's assertion of fact as required
> by Rule 56(c), the court may:
>
> > (1) give an opportunity to properly
> > support or address the fact;
> > (2) consider the fact undisputed for
> > purposes of the motion;
> > (3) grant summary judgment if the motion
> > and supporting materials--including the
> > facts considered undisputed--show that
> > the movant is entitled to it; or
> > (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

Summary judgment is proper when, "after an adequate time for

discovery, a party fails to make a showing sufficient to establish

the existence of an essential element of that party's case."

McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations

and internal quotation marks omitted).  "[T]here is no issue for

trial unless there is sufficient evidence favoring the nonmoving

party for a jury to return a verdict for that party. . . .  If the

evidence is merely colorable, . . . or is not significantly probative,

. . . summary judgment may be granted."  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted).

Summary judgment should be granted "where a party 'fails to make a

showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden

of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs.,
Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

IV. DISCUSSION

As set forth above, Plaintiff alleges in his Complaint that
Defendants violated his rights under the Eighth Amendment by
providing inadequate medical treatment for his ulcer and hemorrhoid
condition for an approximate two year period while he was
incarcerated at the Holman Correctional Facility in Atmore, Alabama.
(Doc. 20 at 4-6, 8). Specifically, Plaintiff alleges that
Defendants have refused to refer Plaintiff to a free world specialist
for his conditions, and have refused to prescribe narcotic pain
relievers for his physical pain resulting from these conditions.
(Id.). Plaintiff claims that the lack of proper medical treatment
constitutes a violation of his rights under the Eighth Amendment,
and Plaintiff also appears to allege that Defendants "conspired"
together to deprive him of proper medical care.

A.    Eighth Amendment

The Eighth Amendment provides that, "[e]xcessive bail shall not
be required, nor excessive fines imposed, nor cruel and unusual
punishments inflicted." U.S. Const. amend. VIII. "The Eighth
Amendment's proscription of cruel and unusual punishments prohibits
prison officials from exhibiting deliberate indifference to
prisoners' serious medical needs." Campbell v. Sikes, 169 F.3d

11

1353, 1363 (11th Cir. 1999) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).

In <u>Sims v. Mashburn</u>, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

<u>Sims</u>, 25 F.3d at 983 (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)).

To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the existence of an "objectively serious medical need." <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003).

A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" <u>Id.</u> (quoting <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." <u>Id.</u> (internal quotation marks

and citation omitted).

In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Plaintiff must demonstrate "deliberate indifference" to a serious medical need. Farrow, 320 F.3d at 1243.

"Deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106; Farmer v. Brennan, 511 U.S. 825, 835 (1994).

> The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety*; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added). In interpreting Farmer and Estelle, this Court explained in McElligott that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46 (emphasis in original).

"Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." Hill, 40 F.3d at 1187 (internal citations and

quotation marks omitted).  "Cases stating a constitutional claim for

immediate or emergency medical attention have concerned medical

needs that are obvious even to a layperson because they involve

life-threatening conditions or situations where it is apparent that

delay would detrimentally exacerbate the medical problem."  Id.

> The "seriousness" of an inmate's medical needs
> also may be decided by reference to the *effect*
> of delay in treatment.  Gaudreault, 923 F.2d at
> 208; Monmouth County, 834 F.2d at 347.  Where
> the delay results in an inmate's suffering "a
> life-long handicap or permanent loss, the
> medical need is considered serious."  Id.  An
> inmate who complains that delay in medical
> treatment rose to a constitutional violation
> must place verifying medical evidence in the
> record to establish the detrimental effect of
> delay in medical treatment to succeed.
> Further, we have held that "[t]he tolerable
> length of delay in providing medical attention
> depends on the *nature* of the medical need and
> the *reason* for the delay."  Harris v. Coweta
> County, 21 F.3d 388, 393-94 (11th Cir. 1994)
> (emphasis added).  Consequently, delay in
> medical treatment must be interpreted in the
> context of the seriousness of the medical need,
> deciding whether the delay worsened the medical
> condition, and considering the reason for
> delay.

Hill, 40 F.3d at 1188-89 (emphasis in original) (footnotes omitted).

The Court is not convinced that Plaintiff is suffering from a

serious medical condition.  The Court further notes that there is

no evidence in the record that Plaintiff actually suffers from an

ulcer or from hemorrhoids, as he claims.  However, the Court will

assume, but not decide, solely for purposes of the parties' Motion

for Summary Judgment, that Plaintiff's health condition does constitute an objectively serious medical injury. Therefore, the Court turns to the second, subjective element of Plaintiff's claim, that is, whether Defendants were deliberately indifferent to Plaintiff's serious medical need.

Plaintiff asserts that the fact that he has not been referred to a free world specialist for tests and treatment of his alleged conditions, and the fact that he has not been prescribed the medications which he feels that he needs, namely, a narcotic pain medication, combine together to constitute deliberate indifference by Defendants to his serious medical need. The Court disagrees.

While Plaintiff was at Holman, he was afforded a significant amount of health care for his various complaints, including claimed "ulcer" or abdominal pain. (Doc. 78, Exs. 1, 2). For a limited time, Plaintiff was even prescribed the narcotic pain medication which he now requests this Court to order Defendant Dr. Tesemma to prescribe for him. (Doc. 78, Ex. 2 at 20-23). As noted above, during approximately a fifteen month period of time directly prior to Plaintiff's transfer to St. Clair Correctional Facility, Plaintiff was seen by medical staff at Holman a minimum of thirty-seven times, in addition to being afforded blood work, tests, chronic disease clinic care, and the following medications: Prilosec, Hytrin, CTM, Imodium, Mylanta, Debrox, Tylenol,

Hydrocortisone Cream, Tinactin, Triamcinolone, Cipro, Tolfonato, Tylenol with Codeine, Percogesic, Tums, Motrin, Cortisporin, and Naprosyn. (Doc. 78, Ex. 2 at 17-23, 29-31, 69-72, 74-75, 80-83, 87-89, 91-94, 96-97, 99; Ex. 3 at 1-3, 6, 9, 10-14, 20, 26, 33, 40-50, 68-80).

While it appears that Defendants Tesemma and Myers were aware of Plaintiff's frequent complaints concerning his medical treatment at Holman during the subject period of time, there is no evidence that either Defendant ever disregarded any of those complaints. As discussed above, in order to constitute "deliberate indifference," Defendants must have known of and disregarded an excessive risk to Plaintiff's health. Farrow, 320 F.3d at 1245-46. There is no evidence that either Defendant disregarded any excessive risk to Plaintiff's health.

The undisputed evidence shows that Plaintiff received extensive medical care from the medical staff at Holman. "[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). The fact that a Plaintiff may disagree with the efficacy of the treatment recommended or simply prefer a different course of treatment does not state a valid claim of medical mistreatment under the Eighth Amendment. See, e.g., Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("the question of whether governmental actors should

have employed additional diagnostic techniques or forms of treatment

'is a classic example of a matter for medical judgment' and therefore

not an appropriate basis for grounding liability under the Eighth

Amendment.") (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 107 (1976));

<u>Trotter v. Correctional Medical Services, Inc.</u>, 2008 WL 2225696, *9

(S.D. Ala. 2008) ("It is well-established that a difference in

opinion or a disagreement between an inmate and prison officials as

to what medical care is appropriate for his particular condition does

not state a claim for deliberate indifference to medical needs.")

(citations omitted).

Considering all of the circumstances surrounding the treatment

that Plaintiff received during the subject two year period during

his incarceration at Holman, the Court cannot say that the Defendants

were deliberately indifferent to Plaintiff's medical care.  Thus,

Plaintiff has failed to establish the subjective element of his

Eighth Amendment claim, and Defendants are entitled to summary

judgment as to that claim.

B.    <u>Conspiracy</u>

Next, Plaintiff claims that Defendants Myers and Tesemma

conspired to violate his constitutional rights by depriving him of

adequate medical care.

> "Conspiring to violate another person's
> constitutional rights violates section 1983.
> <u>Dennis v. Sparks</u>, 449 U.S. 24, 27 101 S. Ct. 183,
> 186 (1980); <u>Strength v. Hubert</u>, 854 F.2d 421,

17

425 (11th Cir. 1988), overruled in part on other
grounds by <u>Whiting v. Traylor</u>, 85 F.3d 581, 584
n. 4 (11th Cir. 1996)." <u>Rowe v. City of Fort
Lauderdale</u>, 279 F.3d 1271, 1283 (11th 2002).
"To prove a 42 U.S.C. § 1983 conspiracy, a
plaintiff 'must show that the parties "reached
an understanding" to deny the plaintiff his or
her rights [and] prove an actionable wrong to
support the conspiracy.' <u>Bendiburg v.
Dempsey</u>, 909 F.2d 463, 468 (11th Cir. 1990),
cert. denied, 500 U.S. 932, 111 S. Ct. 2053, 114
L. Ed. 2d 459 (1991). . . . [T]he linchpin for
conspiracy is agreement . . ." <u>Bailey v. Board
of County Comm'rs of Alachua County</u>, 956 F.2d
1112, 1122 (11th Cir. 1992). In order for a
plaintiff "to establish the 'understanding' or
'willful participation' required to show a
conspiracy, ... [he] must [produce] some
evidence of agreement between the defendants.
. . . For a conspiracy claim to survive a motion
for summary judgment '[a] mere "scintilla" of
evidence . . . will not suffice; there must be
enough of a showing that the jury could
reasonably find for that party.' <u>Walker v.
Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990)."
<u>Rowe</u>, 279 F.3d at 1283 1284. Merely "stringing
together" adverse acts of individuals is
insufficient to demonstrate the existence of a
conspiracy. <u>Harvey v. Harvey</u>, 949 F.2d 1127,
1133 (11th Cir. 1992).

<u>Flynn v. Scott</u>, 2006 WL 1236718, *6 (M.D. Ala. 2006) (unpublished).

Having carefully reviewed Plaintiff's Complaint and the record

in this action, there is no evidence to prove that "an actionable

wrong" has been committed against Plaintiff. There simply could

have been no conspiracy between Defendants regarding Plaintiff's

medical care because Plaintiff has failed to show any violation of

his constitutional rights with regard to his medical care claim.

Therefore, Defendants are likewise entitled to summary judgment as

to Plaintiff's conspiracy claim as well.


## V.   CONCLUSION

Based on the foregoing, it is recommended that the Motion for Summary Judgment of Defendants Donny Myers and Doctor Negash Tesemma (Docs. 65, 68, 77, 78) be granted, and that Plaintiff's action be dismissed with prejudice.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.


DONE this 6th day of October, 2011.


s/BERT W. MILLING, JR.
BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. ***Objection***. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[15] after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. ***Transcript (applicable Where Proceedings Tape Recorded).***

---

[15] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed. R. Civ. P. 72(b)(2).

Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.